**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|   |   |
|---|---|
| **AHMAD ODEH**, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **IMMUNOMEDICS, INC.**, *et al.*, <br><br> **Defendants.** | **Case No. 18–cv–17645–MCA–ESK** <br><br><br> **OPINION** |

**KIEL**, **U.S.M.J.**

  **THIS MATTER** is before the Court on lead plaintiffs Construction Industry and Laborers Joint Pension Trust and Boris Saljanin's (collectively, Plaintiffs) motion pursuant to Local Civil Rule 7.1(i) (Motion). (ECF No. 142). The Motion seeks reconsideration of my August 30, 2021 order (ECF No. 140) denying Plaintiffs' motion to compel (Subpoena Motion) non-party Favus Institutional Research, LLC (Favus) to produce documents responsive to Plaintiffs' subpoena *duces tecum* (Subpoena).[1] Favus filed opposition to the Motion. (ECF No. 147.) Defendant Immunomedics, Inc. (Immunomedics) also filed opposition and joined Favus' opposition (Immunomedics Joinder). (ECF No. 149.)

  Plaintiffs filed a reply brief in response to the Immunomedics Joinder. (ECF No. 155.) Immunomedics requested to strike the reply brief for violating Local Civil Rule 7.1(d)(3)'s proscription against reply papers for reconsideration motions. (ECF No. 156 p. 1.) Immunomedics also submitted a proposed sur-reply in response to Plaintiffs' unauthorized reply brief. (ECF No. 156-1.) I have considered all of the filings relating to the Motion. For the following reasons, the Motion is **DENIED**.

---

[1] *See* ECF No. 79-3 p. 16; ECF No. 110-1 p. 19.

## BACKGROUND

The facts relevant to the Subpoena Motion were set forth in my August 30, 2021 opinion (Opinion). (ECF No. 139 pp. 2–4.) Immunomedics is a biopharmaceutical company that develops products for breast cancer treatment. (*Id.* p. 2.) One such product, IMMU-132, received "Breakthrough Therapy Designation" from the Food and Drug Administration (FDA) in February of 2016. (*Id.*) Immunomedics aimed to commercialize IMMU-132 and, with FDA approval, deliver the product to market in 2018. (*Id.*)

On January 31, 2018, a data integrity breach (Breach) occurred at Immunomedics' plant in Morris Plains, New Jersey (Facility), where IMMU-132 would be produced. (*Id.*) The Breach jeopardized approval of Immunomedics' license application for IMMU-132. (*Id.*) Plaintiffs allege that Immunomedics reported the Breach to the FDA but failed to disclose details about the Breach to both the FDA and investors. (*Id.*)

The FDA inspected the Facility in August of 2018 (Inspection). (*Id.* p. 3.) The FDA's request for documents regarding the Breach and its remediation was refused. (*Id.*) As a result, the FDA could not determine whether the Breach was resolved and issued a "Form 483" to Immunomedics. (*Id.*) The Form 483 recorded Immunomedics' refusal to provide documents the FDA requested, and noted violations identified during the Inspection. (*Id.*)

On December 20, 2018, Elliot Favus, M.D. (Dr. Favus) "issued an equity analyst report disclosing in further detail the contents of the … Form 483 and the conclusions made by [the] FDA" during the Inspection (Report). (*Id.* (citing ECF No. 130 ¶¶ 18, 114).) Plaintiffs allege that the publication of the Report caused Immunomedics' stock price to drop because the Report "raised fears that the FDA would not approve" IMMU-132.[2] (*Id.* (citing ECF No. 130 ¶¶ 18, 123).)

---

[2] According to Immunomedics, the FDA has approved IMMU-132, which is now marketed as "Trodelvy®." (ECF No. 149 pp. 4, 5.)

2

## PARTIES' ARGUMENTS

### I. PLAINTIFFS' MOTION

I quashed the Subpoena, which requested the Report (First Request), related communications (Second Request), and Favus' client list. Plaintiffs seek reconsideration as to the First Request and Second Request only. (ECF No. 143 p. 4 n. 1.) Plaintiffs maintain that the Report concerns "events in dispute" such that the Report and related communications should be produced notwithstanding the provisions of Rule 45(d)(3)(B).[3] (*Id.* p. 5.)

Plaintiffs once again argue that the Report is relevant to their securities fraud claims because "the release of the Report disclosed Defendants' fraudulent conduct to investors and the market and both caused the price of Immunomedics' … stock to decline … and triggered Defendants to make additional false statements." (*Id.* p. 4.) According to Plaintiffs, "a jury is going to have to determine whether the Report was a fraud-related disclosure that caused Immunomedics' stock price to decline, damaging Plaintiffs … , and whether the Report caused Defendants to make additional false and misleading statements." (*Id.* p. 5.) Plaintiffs claim that a jury will only be able to make such determinations if the Report is produced.[4] (*Id.*)

---

[3] Rule 45(d)(3)(B) provides that, "[t]o protect a person subject to or affected by a subpoena, the court … may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."

[4] Plaintiffs now have a copy of the Report (ECF No. 143 p. 6 and p. 10 n. 7), which has been disclosed by at least one non-party, Jefferies Equity Research (ECF No. 147 p. 5; *see also* ECF No. 156-1 p. 6). However, Plaintiffs continue to pursue the Report because of anticipated "challenges to authenticity." (ECF No. 143 p. 10 n. 7.) Plaintiffs also claim that the copies of the Report produced in this matter "are of poor quality." (*Id.*)

In addition, Plaintiffs claim the private website FDANews never publicly disclosed information about the Breach or the Form 483 before December 20, 2018. (*Id.* pp. 6, 8.) According to Plaintiffs, the Report indicates that information about the Breach and Form 483 was obtained through a request pursuant to the Freedom of Information Act (FOIA). (*Id.* p. 6.) As such, Plaintiffs argue the Report does not indicate that information about the Breach or Form 483 "was public information … or obtained from a public source." (*Id.* p. 7.)

Furthermore, Plaintiffs argue that the Report contained new facts and new information because the Form 483 was not publicly available before the Report was issued on December 20, 2018. (*Id.* p. 8.) In support of this contention, Plaintiffs note that investors and analysts reacted "immediately" upon Favus' issuance of the Report. (*Id.* p. 9.) And because no analyst had ever discussed the Form 483 in any analyst report before December 20, 2018, the Report's discussion of the Breach and Form 483 constituted "new" information. (*Id.*)

Plaintiffs elsewhere point out that the Report was not limited to Dr. Favus's analysis and opinions of the Form 483. (*Id.*) Instead, the "overwhelming majority" of the Report is "a recitation of the factual information in the Form 483," and includes a copy of the Form 483 itself. (*Id.* pp. 9, 10.) Additionally, insofar as Plaintiffs now have a copy of the Report, Plaintiffs claim that Favus has not been harmed by the production of the Report. (*Id.* p. 10.) In sum, Plaintiffs maintain that "the true facts show that the Report is not simply comprised of [Dr. Favus's] opinion about otherwise publicly available information." (*Id.*) Finally, Plaintiffs add that, since the Report should be produced, any related communications sought by the Second Request should likewise be produced. (*Id.* pp. 12, 13.)

## II. FAVUS' OPPOSITION

In opposition to the Motion, Favus argues that Plaintiffs "allege no mistake, no new evidence, no fraud, or any other reason that justifies relief" on their Motion. (ECF No. 147 p. 8.) Favus claims that "Plaintiffs are simply trying to relitigate an issue that has already been decided." (*Id.* pp. 8, 9.) According to Favus, there are no facts in dispute contained in the Report because "the only facts contained in the Report are a regurgitation of what is contained in the Form 483 itself." (*Id.* p. 17.)

Favus also contends that Plaintiffs improperly seek to redefine "publicly available" information. (*Id.* p. 5.) Favus maintains that material available through a FOIA request is, in fact, "publicly available." (*Id.* pp. 10, 11 (citing 5 U.S.C. §552a (providing that "[e]ach agency shall make" public information "available")).) Favus reiterates that the FDA made the Form 483 publicly available through FOIA.[5] (*Id.* p. 13.)

In addition, Favus refers to online articles annexed to its opposition to the original Subpoena Motion to demonstrate that the existence of the Form 483 and subject of the Breach were publicly disclosed before Favus issued the Report on December 20, 2018. (*Id.* p. 14 (citing ECF No. 82-2).) Favus maintains that the Court "correctly set forth and correctly interpreted" the facts relevant to the Subpoena Motion. (*Id.* p. 14.)

Furthermore, Favus contends the information relating to the Breach and Form 483 were not "new" to either investors or analysts as of December 20, 2018. (*Id.* p. 15.) It adds that the relevant inquiry is "whether the subpoenaed

---

[5] I decline to address the issue of whether material that may be obtained through a FOIA request is "publicly available." Favus' opposition to the Subpoena Motion argued the Form 483 "was also publicly available pursuant to FOIA[.]" (ECF No. 82 p. 8.) Plaintiffs failed to address this specific contention in its reply brief in further support of the Subpoena Motion. (ECF No. 90.) "[R]econsideration is not to be used as a means of expanding the record to include matters not originally before the court." *Garcia v. Bartkowski*, No. 11-03689, 2017 WL 3671289, at *1 (D.N.J. Aug. 23, 2017) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F.Supp.2d 610, 612 (D.N.J. 2001)).

information contains facts in dispute that are new *to this case*." (*Id.* (emphasis in original).) Favus submits that the Form 483 and Breach are not "new facts at issue here" since they "are already known to the parties." (*Id.*)

Finally, Favus asks the Court to use its inherent power to redress the improper disclosure of the Report by Jefferies Equity Research, though Favus concedes the issue of improper possession and disclosure of the Report "is not *sub judice*."[6] (*Id.* pp. 18, 19.) In addition, Favus requests costs and fees since Plaintiffs failed to "take reasonable steps to avoid imposing undue burden or expense" on Favus in connection with the Motion pursuant to Rule 45(d)(1). (*Id.* pp. 19, 20.)

### III. IMMUNOMEDICS JOINDER

Immunomedics Joinder notes that Plaintiffs now possess the Report, effectively disposing of the need for this Court to revisit the decision as to the Subpoena's First Request. (ECF No. 149 p. 4.) Immunomedics also questions Plaintiffs' claim that the Report "made the first public disclosure of the Form 483 discussion of" the Breach. (*Id.* p. 5 (emphasis removed).) In addition, Immunomedics highlights Dr. Favus's certification submitted with the Subpoena Motion (Favus Certification), wherein Dr. Favus certifies that "the existence of the Form 483 and the subject of [the] … [B]reach were publicly disclosed on the internet."[7] (*Id.* (citing ECF No. 82-1 ¶ 8).)

Immunomedics maintains that the Court "recognized and relied on" evidence that "the facts analyzed in the … Report were disclosed publicly in the weeks *before* December 20, 2018[.]" (*Id.* p. 9 (citing ECF No. 139 p. 10).) Thus, the record before the Court "was clear and undisputed." (*Id.* p. 10.)

---

[6] Given Favus' acknowledgement that the issue of any improper disclosure of the Report is not presently before the Court, the matter will not be considered.

[7] As directed by the Court (ECF No. 140 p. 1 ¶ 3), Favus filed an amended Favus Certification with the correct *jurat* pursuant to 28 U.S.C. § 1746 (ECF No. 141).

6

Immunomedics also references online sources discussing the Form 483 and Breach, which were publicly accessible before the issuance of the Report.  (*Id.* p. 11 (citing ECF No. 82-2) and p. 12 (citing ECF Nos. 149-1, 149-3, 149-4, 149-5).)  Immunomedics adds that Plaintiffs offer no new, previously unavailable facts that support granting the Motion.  (*Id.* pp. 13, 14.)

## IV. PLAINTIFFS' REPLY BRIEF

In response to the Immunomedics Joinder[8], Plaintiffs initially argue that Immunomedics lacks standing to oppose the Motion because the Subpoena was directed to Favus, which is a non-party to this matter, and since Immunomedics claims no personal privilege or right in the subpoenaed materials.  (ECF No. 155 pp. 4, 5.)  They also note that Immunomedics neither objected to the Subpoena nor took any position on the Subpoena Motion.  (*Id.* p. 5.)

Plaintiffs nevertheless respond substantively to the Immunomedics Joinder and contend that the Court "incorrectly assum[ed] … that the information in the … Report was publicly disseminated before December 20, 2018 and that the Report did not describe events or occurrences in dispute."  (*Id.* p. 7.)  Plaintiffs maintain that the Breach and Form 483 "were not disclosed to investors and the market before the [issuance of] the … Report."  (*Id.* p. 8.)

According to Plaintiffs, the Court based its decision on the Subpoena Motion on a number of incorrect "factual predicates," namely: "(1) Favus did not get the Form 483 from a public source; (2) the Form 483 was not publicly available from the FDA before December 20, 2018; (3) the … Report contained new facts and information; (4) the [R]eport was not limited to Favus' analysis and opinions; and (5) Favus cannot be harmed by production of the Report."  (*Id.*)

Plaintiffs also contend that online posts by FDANews were not "publicly available" because access to those posts is limited to subscribers.  (*Id.* pp. 10–13.)

---

[8] Plaintiffs' reply brief does not purport to respond substantively to the contentions made in Favus' opposition to the Motion.  (ECF No. 155.)

7

Plaintiffs claim that Favus did not obtain the Form 483 from the FDANews website, the FDA's website, or "any public source." (*Id.* p. 13.) Plaintiffs also question two websites—*Harbor Healthcare Consulting* and *Silicon Investor*—cited in the Immunomedics Joinder, disputing that either source made information about the Breach or Form 483 "publicly available" to investors or market participants. (*Id.* pp. 13, 14.)

## V. IMMUNOMEDICS' SUR-REPLY

In response to Plaintiffs' reply brief, Immunomedics challenges Plaintiffs' standing argument because, among other grounds, Plaintiffs have raised a potentially "case-dispositive" issue on the timing of the alleged public disclosure of the Breach and Form 483, thereby constraining Immunomedics to respond. (ECF No. 156-1 pp. 6–8.) Immunomedics submits that "the need … to appear in connection with this third-party discovery issue only ripened when Plaintiffs sought reconsideration" to the possible prejudice of Immunomedics. (*Id.* p. 8.)

Furthermore, Immunomedics contends that Plaintiffs fail to cite any intervening change in law, new facts that were previously unavailable before the Subpoena Motion was decided, or any material error in the Court's evaluation of the facts presented by the Subpoena Motion. (*Id.* pp. 5, 9.) Immunomedics maintains that the Court "appropriately evaluated the evidence … and credited the showing made by Favus." (*Id.* p. 9.)

## **APPLICABLE LAW**

"The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration." *Morton v. Fauver*, No. 97-05127, 2011 WL 2975532, at *1 (D.N.J. July 21, 2011) (citing *United States v. Compaction Sys. Corp.*, 88 F.Supp.2d 339, 345 (D.N.J. 1999)). Pursuant to Local Civil Rule 7.1, a motion for reconsideration shall "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]" L.Civ.R. 7.1(i). "There are three grounds for reconsideration: (1) to accommodate

an intervening change in controlling law; (2) to account for new evidence that was previously unavailable; or (3) to correct a clear error of law or to prevent manifest injustice." *Seidle v. Neptune Twp.*, No. 18-04428, 2020 WL 4349901, at *1 (D.N.J. July 29, 2020) (citing *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F.Supp.2d 482, 507 (D.N.J. 2002)). Courts "will grant a motion for reconsideration only where a previous decision has overlooked a factual or legal issue that may alter the disposition of the matter." *Garcia v. Bartkowski*, No. 11-03689, 2017 WL 3671289, at *1 (D.N.J. Aug. 23, 2017) (citing L.Civ.R. 7.1(i)).

"[R]econsideration is not to be used as a means of expanding the record to include matters not originally before the court." *Id.* (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F.Supp.2d 610, 612 (D.N.J. 2001)). "Reconsideration motions … may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *N.L. Indus., Inc. v. Com. Union Ins. Co.*, 935 F.Supp. 513, 516 (D.N.J. 1996). "Reconsideration does not provide parties with an opportunity for a second bite at the apple." *Garcia*, 2017 WL 3671278, at *2 (citing *Tishcio v. Bontex, Inc.*, 16 F.Supp.2d 511, 532 (D.N.J. 1998)). Reconsideration is an extraordinary remedy granted "very sparingly." *Brackett v. Ashcroft*, No. 03-03988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003) (quoting *Interfaith Cmty. Org.*, 215 F.Supp.2d at 507).

## **DECISION**

I find no basis to vacate the prior order. The Motion essentially argues that the Court overlooked factual issues concerning the availability and content of the Report. Plaintiffs once again contend that the Form 483 was not publicly available before the Report's issuance of December 20, 2018, the Report contained new information, and the Report concerns "events in dispute." Plaintiffs appear to take the position that, because the Report contained new facts, the information contained in the Report could only have described "specific occurrences in

9

dispute," thus eliminating the applicability of Rule 45(d)(3)(B).  (ECF No. 139 pp. 4, 5.)

Rule 45(d)(3)(B) contains no verbiage about "new" information or "new" facts.  Rather, the Rule explicitly provides that a subpoena may be quashed if it requires the disclosure of information not describing "specific occurrences in dispute."  Fed.R.Civ.P. 45(d)(3)(B).  Thus, Plaintiffs incorrectly presuppose that new information will always be "in dispute" for purposes of Rule 45(d)(3)(B).[9]

Nor do Plaintiffs claim that the Report was the result of "discrete fact-finding" by Dr. Favus, which might otherwise warrant compulsory production of the Report (a copy of which Plaintiffs now have).  *See In re Schaefer*, 331 F.R.D. 603, 608 (W.D. Pa. June 3, 2019).  The Motion's references to Immunomedics' denials of Plaintiffs' substantive allegations in this matter as a basis for recognizing that the Report "describe[s] specific occurrences in dispute" under Rule 45(d)(3)(B) are unpersuasive.  (ECF No. 143 p. 11.)  While the parties may dispute issues such as whether the Report caused Immunomedics' stock price to drop or whether Immunomedics made misleading statements in response to the Report's issuance, those issues are distinct from whether the content of the Report describes "specific occurrences in dispute" for purposes of Rule 45(d)(3)(B) analysis.  *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 242 (E.D. Pa. 2014).

Actually, the occurrence of the Breach, the Inspection, and the FDA's subsequent issuance of the Form 483 would not seem disputed.[10]  And the Report merely describes those facts, along with Dr. Favus's opinion as an unretained expert.  As Favus succinctly states in opposition to the Motion, there

---

[9] The prior Opinion only addressed whether the Report contained "new facts" or "new information" (ECF No. 139 pp. 10, 11) in response to Plaintiffs' arguments as set forth in the Subpoena Motion.  (ECF No. 79 pp. 12–14.)

[10] Immunomedics appears to acknowledge that "[t]he Form 483 at issue here was issued by the FDA in August 2018 following [the] [I]nspection[.]"  (ECF No. 149 p. 4.)

10

are no facts in dispute contained in the Report because "the only facts contained in the Report are a regurgitation of what is contained in the Form 483 itself." (ECF No. 147 p. 17.) Plaintiffs would seem to agree with Favus' contention insofar as the Motion argues that the "overwhelming majority" of the Report is "a recitation of the factual information in the Form 483."[11] (ECF No. 143 pp. 9, 10.)

Based on the record presented on the Subpoena Motion, I concluded that "[t]he Report does not contain new information, new facts, or information describing specific occurrences in dispute."[12] (*Id.* p. 11.) According to the Favus Certification, Dr. Favus "prepared [the] Report …, which was comprised by [his] analysis and opinion of a publicly available FDA Form 483 issued to [Immunomedics] on … August 14, 2018 … [p]rior to the … Report, the existence of the Form 483 and the subject of [the] [B]reach were publicly disclosed on the internet." (ECF No. 82-1 ¶ 8.)

Consistent with the statements set forth in the Favus Certification, Favus' opposition to the Subpoena Motion pointed to various online sources available before December 20, 2018 discussing the Breach, Inspection, and Form 483. (ECF No. 82-2.) There is no evidence presented that Favus had priority access to documents issued by the FDA to the exclusion of other analysts, investors, or even to the parties to this lawsuit.

Moreover, Plaintiffs now have a copy of the Report. Plaintiffs appear to anticipate "challenges to authenticity" and note the "poor quality" of the copy they have obtained. (ECF No. 143 p. 10 n. 7.) These points are not sufficiently

---

[11] Since Dr. Favus did not author the Form 483, and since the balance of the Report contains Dr. Favus's unretained expert's opinion, Dr. Favus did not engage in any "discrete fact-finding" that would otherwise support compulsory production of the Report. *See In re Schaefer*, 331 F.R.D. at 608.

[12] The parties' concerns over the potential resolution of "case-dispositive" issues constrain the Court to clarify the scope of the Opinion. My determination was not based on whether the Report contained "new" information to investors or to the market. In resolving the Subpoena Motion, I determined that the Report does not describe any specific occurrences in dispute under Rule 45(d)(3)(B).

11

compelling to prompt this Court to reconsider and reverse the Opinion. Moreover, granting reconsideration will not alter the disposition of this matter now that Plaintiffs have the Report. *Garcia*, 2017 WL 3671289, at *1. While Plaintiffs have renewed their pursuit for communications related to the Report, the Court will not revisit its decision on the Second Request, because Plaintiffs have not shown they are entitled to the Report under Rule 45(d)(3)(B).

The Motion neither references any intervening change in controlling law nor presents new evidence that was previously unavailable. *See Interfaith Cmty. Org.*, 215 F.Supp.2d at 507. The Motion purports to correct a clear error of law, *Seidle*, 2020 WL 4349901, at *1, since Plaintiffs argue that, in basing the Opinion on errors of fact, the Court "erroneously applied the 'unretained expert' exception under Rule 45." (ECF No. 143 p. 11 n. 8.) However, as previously discussed, the Court did not overlook any factual issues in determining that the Report contained no new information, and described no specific occurrences in dispute. Plaintiffs have not demonstrated their entitlement to materials responsive to the First Request or Second Request. The Report and related communications are protected under Rule 45(d)(3)(B).

## CONCLUSION

For all the foregoing reasons, the Motion (ECF No. 142) is **DENIED**. A separate order accompanies this Opinion.

                                                        */s/ Edward S. Kiel*
                                                        EDWARD S. KIEL
                                                        UNITED STATES MAGISTRATE JUDGE

Date: November 24, 2021