```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

ODEH,                                  .
                                       .
        Plaintiff,                     .
                                       .  Case No. 18-cv-17645
vs.                                    .
                                       .  Newark, New Jersey
IMMUNOMEDICS, INC., et al.,            .  February 16, 2023
                                       .
        Defendants.                    .
                                       .


                        TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE EDWARD S. KIEL
                   UNITED STATES MAGISTRATE JUDGE


APPEARANCES (the parties appeared via teleconference):


 For the Plaintiff:      TOR GRONBORG, ESQ.
                         Robbins Geller Rudman & Dowd LLP
                         655 West Broadway
                         San Diego, CA 92101
                         (619) 231-1058

                         ELLEN GUSIKOFF STEWART, ESQ.
                         Robbins Geller Rudman & Dowd LLP
                         655 West Broadway
                         San Diego, CA 92101
                         (619) 231-1058




Audio Operator:

Transcription Service:   KING TRANSCRIPTION SERVICES
                         3 South Corporate Drive, Suite 203
                         Riverdale, NJ  07457
                         (973) 237-6080

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
 1   (APPEARANCES continued)

 2   For the Plaintiff:     JAKE WALKER, ESQ.
                            Block & Leviton, LLP
 3                          260 Franklin Street, Suite 1860
                            Boston, MA 02110
 4                          (617) 398-5600

 5                          JEFFREY C. BLOCK, ESQ.
                            Block & Leviton, LLP
 6                          260 Franklin Street, Suite 1860
                            Boston, MA 02110
 7                          (617) 398-5600
                            Jeff@blockleviton.com
 8
                            LINDSEY H. TAYLOR, ESQ.
 9                          Carella, Byrne, Cecchi, Olstein,
                            Brody & Agnello
10                          5 Becker Farm Road
                            Roseland, NJ 07021
11                          (973) 994-1700
                            ltaylor@carellabyrne.com
12

13   For the Defendants:    MARY BETH MALONEY, ESQ.
                            Gibson, Dunn & Crutcher LLP
14                          200 Park Avenue
                            New York, NY 10166-0193 US
15                          (212) 351-2315
                            Mmaloney@gibsondunn.com
16
                            ALLISON KOSTECKA, ESQ.
17                          Gibson, Dunn & Crutcher LLP
                            1801 California Street, Suite 4200
18                          Denver, CO 80202-2642
                            (303) 298-5718
19                          Akostecka@gibsondunn.com

20
     For the Defendant      RODNEY VILLAZOR, ESQ.
21   Usama Malik:           Smith Villazor LLP
                            250 West 55th Street, 30th Floor
22                          New York, NY 10019
                            (212) 582-4400
23                          Rodney.villazor@smithvillazor.com

24

25
```

```
 1  (APPEARANCES continued)

 2  For the Defendant        MICHAEL K. SALA ESQ.
    Usama Malik:             Smith Villazor LLP
 3                           250 West 55th Street, 30th Floor
                             New York, NY 10019
 4                           (212) 377-0858
                             Michael.sala@smithvillazor.com
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  (Commencement of proceedings)
 2              THE COURT:  Good morning, everyone.  We're on the
 3    record in the matter of Odeh versus Immunomedics.  It's
 4    18-cv-17645.
 5              I know we have a number of people on the call.  So
 6    let me just go through, as best as I can, for appearances.
 7              Let me ask for a co-lead plaintiff Construction
 8    Industry and Laborers?  Anybody on for Carella Byrne?
 9              MR. TAYLOR:  Yes, Your Honor, Lindsey Taylor.
10              THE COURT:  Good morning.
11              And how about for lead plaintiff Saljanin.
12              MR. WALKER:  Good morning, Your Honor.  Jacob
13    Walker on behalf of lead plaintiffs from Block & Leviton.
14              THE COURT:  Okay.
15              Anybody else for --
16         (Simultaneous conversation)
17              THE COURT:  I'm sorry.  Was there somebody else?
18              MR. BLOCK:  I was going to note my appearance,
19    Your Honor.  Jeffrey Block also for lead plaintiff.
20              THE COURT:  Thank you very much.
21              And how about for plaintiff Odeh, anybody from Lite
22    DePalma?
23              MALE SPEAKER:  I don't believe there will be,
24    Your Honor.
25              THE COURT:  Okay.
```

```
 1                And how about for Immunomedics?  Why don't we start
 2   with Immunomedics?
 3                FEMALE SPEAKER:  Good morning, Your Honor -- I'm
 4   sorry.
 5        (Simultaneous conversation)
 6                MS. STEWART:  I'm sorry.  It's Ellen Gusikoff
 7   Stewart and Tor Gronborg of Robbins Geller on behalf of the
 8   lead plaintiffs and the class.
 9                THE COURT:  I apologize for that.  I know that
10   you're lead counsel on the case.
11                MS. STEWART:  It's okay.
12                THE COURT:  My apologies.
13                And how about for Immunomedics?  Why don't we start
14   with people from Gibson Dunn.
15                MS. MALONEY:  Thank you, Your Honor. Good morning.
16   This is Mary Beth Maloney.  I'm joined by my colleague
17   Allison Kostecka on behalf of Immunomedics and certain
18   individual defendants.
19                THE COURT:  Okay.  And how about defendant Malik?
20   Anybody from Smith Villazor?
21                MR. VILLAZOR:  Good morning, Your Honor.  Rodney
22   Villazor and Michael Sala for Usama Malik.
23                THE COURT:  Okay.  Did I miss anybody?  Thank you.
24                I've read everything.  Everything seems to be in
25   order.  And I'm ready to put it on the record.
```

1             But I just had one question and one sort of concern
2   in my mind, and this is the only reason for this hearing that
3   we're having, and it's really a question for plaintiff.  I
4   tried to read through everything.  Everything, as I say,
5   seems to be in order, and I understand everything.
6             The only question that I had was about the
7   plaintiff allocations.  And I read it through a few times.
8   And I was trying to make sense of it, and, perhaps, this is
9   something that's done regularly in the course of settlement
10  class action securities fraud cases.
11            But can you just go over for me how the claim is
12  calculated?  And I'm looking particularly at ECF
13  Number 269-3, which is the notice that's going out to the
14  class.  And at page 19 of it or -- which is on the ECF
15  docket, page Number 101, and I was trying to figure out how
16  that claim was calculated.  And I know that it was done
17  through plaintiff's expert -- the damages expert -- with a
18  90-day look-back period.
19            But I see some of the damages calculations have a
20  90-day look-back price and some of them don't.
21            So can somebody from the plaintiff just provide me
22  with some education on how that claim calculation was done?
23            MR. GRONBORG:  Your Honor, this is Tor Gronborg.
24  I'm happy to --
25            THE COURT:  Thank you.

1        MR. GRONBORG: -- colleagues to jump in.
2        I think answering your first question about why do
3 some of the claims have a 90-day look-back price and others
4 don't, that has to do with when somebody held the shares
5 through. And --
6        THE COURT: Okay.
7        MR. GRONBORG: -- as you recall in this case, there
8 are there -- there are certain partial disclosures which
9 occurred during the class period and --
10       (Simultaneous conversation)
11       THE COURT: Right. And I looked at the -- some of
12 the dates -- right. And I looked at the transition -- the
13 transaction period, and certain dates are keyed off of
14 certain disclosures that were made. And that, I understand.
15       So --
16       MR. GRONBORG: Correct. So if somebody, for
17 example, purchased prior to an alleged disclosure in November
18 but then sold before the end of the class period, their
19 purchase price would be set by that disclosure date and the
20 price, then, the 90-day look-back wouldn't apply because they
21 didn't hold through the end of the class period --
22       THE COURT: Oh, I see.
23       MR. GRONBORG: -- for other people who were
24 holding -- who continued to hold and they held through the
25 end the class period, the 90-day look-back applies.

```
 1                 THE COURT:  Got you.  Oh, and --
 2                 MR. GRONBORG:  So that is --
 3                 THE COURT:  And then I understand.  I appreciate
 4     that explanation.
 5                 And then how was the calculation of the person --
 6     for example, the first category is the lesser of, one,
 7     purchase price minus sales price, or, two, a $1.03.  And then
 8     there's other ones.  The next one is $1.52.  And going down,
 9     it's $2.05 and $3.04.
10                 How was that calculated?
11                 MR. GRONBORG:  And so those are calculated based on
12     the damages that were assessed, the alleged damages that were
13     assessed for each of the partial disclosures.  And they
14     increase in the sense of if you held through one disclosure,
15     your damages were, let's say, $1.03.
16                 If you continued to hold through a second
17     disclosure, the damages would increase based on the alleged
18     losses that were occurred:  the alleged damages or artificial
19     inflation that came out of the stock price on that date.
20                 Now, of course, some people bought in between
21     disclosures.  So, of course, they wouldn't be -- they would
22     not have been damaged as a result of the first alleged
23     disclosure, and it would just be the second.  And that's why
24     we end up with so many tranches here for that --
25                 (Simultaneous conversation)
```

```
 1                  THE COURT:  Right.  And I imagine --
 2          (Simultaneous conversation)
 3                  MR. GRONBORG:  -- perfectly simple case --
 4                  THE COURT:  Yeah, if it were a simple case with
 5   just one disclosure, then I think that that would be a easy
 6   analysis.
 7                  But I -- but, I guess, my question -- or my concern
 8   was that -- or just a confirmation that I would seek was that
 9   this was done through an expert who went through this, and
10   there's an expert report that goes through all of this
11   analysis, I presume.  Right?
12                  MR. GRONBORG:  Correct.  And, in fact, it's the
13   same expert who we used for purposes of class certification,
14   Mr. Greg Edwards.  He -- we worked with him on -- we also
15   worked with the claims administrator, because just -- just by
16   way of background, you probably know, for most people,
17   they're not actually -- they don't have to do this
18   calculations themselves -- a plaintiff.
19                  THE COURT:  Right.
20                  MR. GRONBORG:  So we work with the experts who come
21   up with what the damages are.  We work with the claims
22   administrator to make sure they have a calculation that they
23   can program such that people really -- all they do is submit
24   their purchase and sales date.  And then it is run through
25   the program that has this information that will then
```

```
 1   calculate the damages.
 2             THE COURT:  But then when the notice goes out and
 3   if somebody had a concern or a question, not necessarily a
 4   concern but a question of how these numbers were derived and
 5   these periods were derived, would the expert report from
 6   which it was derived from be available to them for review?
 7             MR. GRONBORG:  We don't generate an expert report
 8   for it.  We work with the experts.  So I -- just like now,
 9   what would happen is we would have a conversation with
10   someone and explain and walk them through what each of the
11   alleged disclosures were and why the dollar amounts were
12   identified, the damage amounts were identified for each of
13   those disclosures.
14             So it wouldn't -- I am not aware of a case in which
15   expert report was generated.
16             THE COURT:  Well, how --
17             MR. GRONBORG:  -- plan of allocation.
18             THE COURT:  Yeah, and I -- and I understand and I
19   appreciate the plan of allocation can't have every single
20   detail of how it was derived because it would be so many
21   pages long.
22             But if someone -- if one of the class members
23   wanted to get information, is there some availability of how
24   it was derived?
25             MR. GRONBORG:  There is.  I mean, we would provide
```

1  it.  I said typically in a call, just like any other
2  question, class members are directed to both the claims
3  administrators and the --
4          (Simultaneous conversation)
5          MR. GRONBORG:  -- is a fairly regular occurrence
6  that people will call; we'll discuss it.  If somebody wanted
7  something written, we would, you know, prepare it.  We could
8  point to certain information that was submitted with class
9  certification that at least has what the -- or what the
10 statistically significant company-specific drops were on
11 certain days, that if that is an underlying basis for the
12 plan of allocation.  So there is.
13         But what would typically happen is we would have
14 calls with people.  And to the extent that they --
15         (Simultaneous conversation)
16         THE COURT:  -- and I guess just looking forward --
17 and you all are more experienced in this, and I don't know
18 how often this happens, but my -- just thought was looking
19 ahead, if somebody files a letter on the docket and says, you
20 know, "I object because the plan of allocation doesn't
21 provide in enough detail to figure out how it was done," and
22 I -- and the plaintiff will certainly have an opportunity to
23 respond to it.  That's just my concern.
24         But it's certainly alleviated when you tell me that
25 you'll certainly be able to answer any questions, and they

1  can call, and you would go over those things with them.

2           That's my understanding.  Right?

3           MR. GRONBORG:  That is right.  And in your

4  scenario, if someone did that, our first step would probably

5  be to each out to them, you know, try and explain what the

6  basis was, try and alleviate any concern they had, and then,

7  obviously, if need be, we would address it further in

8  briefing.  But the first step is obviously just to talk to

9  the claimant and try to address any questions they have.

10          THE COURT:  Okay.  I.

11          MR. WALKER:  Your Honor --

12      (Simultaneous conversation)

13          MR. WALKER:  This is Jacob Walker, also on behalf

14  of plaintiffs.

15          I just will point out as well, on page 4 of the

16  notice, we do provide telephone numbers and email addresses

17  of counsel or the claims administrator.  So it is not at all

18  uncommon -- looks like we've got a settlement right now

19  that's, you know, out.  The notices are going out.  And it's

20  not at all uncommon for us to receive calls with questions.

21  And we are always very good about, you know, spending time

22  with the class member explaining exactly how things work and

23  almost always, you know, alleviate those questions through

24  that mechanism.

25          But that information is provided in the notice so

1  it's easy for a class member to each out to us if they do
2  have those questions.
3          THE COURT:  Okay.  Thank you for that.
4          All right.  Well, I'm satisfied it was sufficiently
5  vetted and the information will be available for the class
6  members when they have questions.
7          That's the only question that I had.  I'm going to
8  not make everybody sit on the phone and listen to me drone on
9  for the next 20 minutes as I put it on the record.
10         I do have a date -- oh, let me just ask from the
11 defendants' perspective.  Anything that you want to add?  I
12 know that there was no opposition filed.  This is an
13 unopposed motion.
14         But let me give an opportunity for the defendant to
15 say anything, if they wanted to add anything.
16         MS. MALONEY:  Nothing, Your Honor.
17         THE COURT:  None?  Nothing?  Okay.
18         MR. VILLAZOR:  Not for defendant Malik either.
19         THE COURT:  All right. Very good.
20         So I'm going to set the final fairness hearing for
21 June 15th at 10:00 A.M.  My very smart law clerk has gone
22 through the form of order and all the notices, and there are
23 a number of edits that need to be made as a result of that
24 date and also just changing Judge Padin to me.
25         And I would like to email that to somebody from the

1  plaintiffs' perspective.
2              Can I send that to -- let me see who's here.  Go
3  ahead.
4              MS. STEWART:  This is Ellen, Your Honor.  You can
5  send that to me.  I'll have my office fill in the dates and
6  send it back to the Court.
7              THE COURT:  Okay.  What's your email address?
8              MS. STEWART:  It's Ellen G -- elleng@rgrdlaw.com.
9              THE COURT:  Okay.  Let me get that.
10             Ellen, E-l-l-e-n, and then the letter
11 "g"@rgrdlaw.com.
12             MS. STEWART:  Yes, Your Honor.
13             THE COURT:  Okay.  And I'll email that to you with
14 the edits that I ask.  And if you could just put those in,
15 send it back to us by -- on a Word format, and then we'll --
16 I think we calculated all the dates correctly, but please do
17 take a look at that.  And then if you email it to us, we'll
18 get it on docket sometime today, just so that we can have
19 that date set and -- because I know some of the dates are
20 teed off of the entry of the order.
21             All right.
22             MS. STEWART:  Yes.
23             THE COURT:  So I will put it on the record.  And
24 the transcript will probably be available within a few days.
25             Let me ask.  Anything further for the parties?

1  Nothing.  All right.
2          Well, thank you very much for everybody getting on
3  the call.  Thank you for putting together papers that are
4  very easy to follow.  And I know this was a hard-fought and
5  well-litigated case.  And I congratulate the parties on at
6  least the preliminary portion of the settlement.
7          Have a good day, everybody.
8          We are off the record.
9              (Conclusion of proceedings)

Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 16 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

s/ *Sara L. Kern*                                  6th of March, 2023
_____        _____
Signature of Approved Transcriber                    Date


Sara L. Kern, CET**D-338
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080